Petition for a Re-hearing.
[By Mr. Owsley.]
The prominent and material facts of this case admit of no doubt, and are briefly as follows: viz. Some years before the date of the note on which Ross recovered his judgment at law against Rodes and his surety, Goodloe—the former borrowed of Bogies about five hundred dollars, at the usurious rate of twelve per centum per annum interest, and executed his note to Bogies for the principal and illegal interest at that rate until the note was payable. Rodes afterwards, at several successive times, renewed 'his note to Bogies, including, in each renewed note, the principal and interest, at the same illegal and usurious rate, up to the time the last note executed to Bogies became payable. Subsequent to the last note falling due, Bogies, in consideration of work done for them by Ross, sold and assigned the note on Rodes; but they previously made known to Ross, the amount of money originally loaned to Rodes, and the illegal interest which had been exacted, and which was included in the note. But before he received from Bogies the note, Ross applied to Rodes, who told him that it should be paid. After the note was received by Ross, and months after it became payable, he applied to Rodes, who, together with his surety Goodloe, executed the note on which the judgment was recovered by Ross, at law. Ross gave up to Rodes, the note which had been last given by him to Bogies, and received the note of Rodes and his surety Goodloe, for the amount of the note so given up, and ten per cent, per annum interest from the time the last note to Bogies was payable, until the note executed by Rodes and Good *595 loe became payable. Rodes finally failed, and his surety, Goodloe, filed his bill in equity, with injunction, to be relieved against the usurious interest which had been exacted by Bogies, and included in the notes of Rodes to them, and also against the usurious interest which was afterwards exacted by Ross, and all of which was included in the note to Ross.
The Circuit Court was of opinion, and accordingly decreed, that Goodloe should have relief to the extent of usurious interest included in the last note, whether it accrued whilst the debt was Bogies, or after it came to Ross. But in the opinion rendered by this Court, a different principle is adopted, and though relief is still extended to Goodloe, for the usurious interest exacted by Ross, after he obtained the note from Bogies, relief is denied as to the usurious interest which was exacted by Bogies, and which accrued before they assigned the note to Ross. The result of this Court’s opinion diminishes the amount decreed by the Circuit Court to Goodloe, only about one hundred and six dollars; but the principle assumed in the opinion, is one of much consequence to the community, and is conceived by the counsel of Goodloe to deserve a reconsideration by the Court; and he would therefore respectfully ask a re-hearing of the cause, or an alteration of the opinion rendered.
It is presumed that, no one will deny that, as to the usurious interest which was contained in the note which was assigned by Bogies to Ross, the note was not binding on Rodes before the assignment, nor at any time after it came by assignment to Ross. The statute of 1819 is explicit, and declares all bonds, contracts or assurances, thereafter to be made, for the payment or delivery of any money &c. to be lent, on which a higher interest is reserved or taken than six pounds for the forbearance of one hundred pounds for a year, and after that rate for a greater or lesser sum, shall be utterly void, so far as relates to the usurious interest. The statute makes no exceptions in favor of assignees; nor can a note which is void as to the usury in the hands of the payee, be otherwise than void to the same extent in the hands of an assignee for valuable consideration. As respects the usu *596 rious interest, there is no reason for regarding the assignee under the statute of 1819, in a more favorable condition than he would have occupied under the law which was in force in this country at the passage of that statute, and which was substantially copied from the statute in England against usury. The only essential difference between the law as it now is, and as it formerly was, consists in the difference as to the extent to which the usurious contract, note, or assurance &c, is made void. The law as it now is, makes the note &c. void only.as to the usurious interest; as the law formerly was, the contract or assurance &c. was declared totally and entirely void. But so far as void under the present law, the contract or assurance is as effectually inoperative, as if it had been as it was under the former law declared altogether void, According to the settled judicial construction of the former law, the usurious contract was not only void as between the parties thereto, but void as to all persons who might claim an interest therein. Thus, it has been held that a security-given to the lender is void against the borrower, in the hands of an assignee for a valuable consideration, and who was not privy to, nor had any notice of, the usurious transaction. Low vs Waller, Doug. R. 736. Ord on Usury, 106. But Ross did not obtain the assignment of Rodes’ note to Bogies without a knowledge of the usurious contract upon which it was founded. He was fully informed by Bogies, of the usurious transaction, and took the assignment with that knowledge. It seems, therefore, to the counsel of Goodloe, that, upon no principle, could Ross, as the assignee of Bogies, whilst the holder of the note on Rodes, be regarded in a better condition, or have stronger claims, than his assignor, to enforce payment against Rodes, If suit had been brought on that note by Ross, will it be pretended, that Rodes could not have successfully resisted the recovery of the usurious interest? Can it be possible, that the statute against usury may be evaded, by a simple assignment of the usurious security, and that assignment made too, when the assignee had full notice of the usurious transaction? The opinion of the court is not, however, understood to assert or maintain such a principle. The note, *597 of Nodes to Bogies, fitter the assignment to Ross, was given up to Ross, and a new note, with Goodloe as the surety, was executed by Rodes to Ross, for the amount, with a further usurious exaction; and the Court, in their opinion, is understood to decide that, under the circumstances, there was a sufficient consideration for the latter note, so as to preclude Rodes or his surety from obtaining relief against the usurious interest exacted by Bogies, though contained in the note which was executed by them to Ross. But if, by the assignment, Ross held the note subject to any defence which Rodes might have urged against it in the hands of Bogies, and if, as is most evident, the note was 'void as to the usurious interest in the hands of Ross, it is not perceived upon what principle of law or equity, Rodes or his surety, Goodloe, can be now compelled to pay any part of the usurious interest. As regards the usurious interest, the note was void, and the surrendering up to Rodes a void obligation, surely formed no sufficient consideration for his undertaking, in a new note, to pay that which he was previously under no obligation to pay, and which he could not have been com; pelled to pay. But I go upon broader ground. I maintain that, under the circumstances of the case, Ross is in no better or more favorable condition than the Bogies would have occupied if the note had been executed to them, and they were parties and not Ross. Ross purchased the note of Bogie, and received the assignment with full knowledge of the usurious transactions between Rodes and Bogie; and I maintain that, by making his purchase and accepting the assignment, he become privy to the illegal and usurious transaction, and that no new consideration, springing from or connected with him, can impose upon Rodes or his surety any obligation in law or equity to pay the usurious interest, or free the transaction from its original turpitude. If the note to the Bogies had been transferred to Ross for a valuable consideration, without notice of the usurious transaction between the Bogies and Rodes, I admit that the afternote of Rodes and his surety, Goodloe, might not be affected by the usury contained in the note to the Bogies, guch is understood to be the doctrine as settled by ju *598 dicial determinations, in England, and this country, under the law in force against usury, before the passage of the statute of 1819. Ellis vs Warns, Croke Jas. 32. Cuthbert and another vs Haley. 8 Term Rep. 390. 2 Mon. 300.
But it is respectfully insisted, that the taking of a new security in substitution of another which was tainted with usury, and delivered up by the holder, who obtained it with notice of the usury, ought not, and does not, change, the rights or obligation of the parties as to the usury contained in the original surety. If it does, how easy for usurers to evade the operation of the statute! By what shallow device may the utter and irretrievable ruin of an unfortunate borrower be brought about by an unfeeling and scheming usurer! Finding himself involved in debt beyond his ability to pay promptly, and allured by the hopes of better times, with what avidity might the borrower be expected to agree to any proposition for further indulgence. With him it could form no objection that the proposition came from another, and not from his creditor. He might desire to get from under the power of a creditor, who, by his illegal and exorbitant usurious-exactions had greatly contributed to his embarrassment, and would, therefore, most likely prefer indulgence from any other, rather than from his creditor. Perceiving the condition of the borrower, and desirous to place his debt in a condition not to be affected by the statute, the usurer would have only to assign his debt to a friend, to whom he might create a debt, or be owing, and prevail on that friend to procure from the debtor a renewal of the note to himself. But the statute is not to be evaded by such a device. Courts have at all times been astute in searching out and guarding against shifts and devices of usurers, to evade the statute; and whilst they have protected the interest of innocent assignees for valuable consideration without notice, who have obtained a new security, in no instance, it is believed, has an assignee of an usurious demand, who became such with notice of the usurious transaction, ever been protected against the usury, though he may have obtained a new security after notice. So far from it, all the cases to which I have had access, imply clearly a different opinion.
*599 The case of Ellis vs. Warns, reported in Croke James, was substantially as follows:—W. was indebted to A, in £100, for the forbearance of which, he agreed to pay more than legal interest, and A. being indebted to E. in £100. W. and A. joined in a bond to E. for payment of his debt. E. sued upon the bond executed to him by W. and A. and the question was as to the validity of the bond. It was held, that inasmuch as the bond was made to E, for a true and just debt, and that he was not knowing or privy to any corrupt agreement between them, it was not usurious. But it is evident from the report of the case, that a different decision would have been given, if, at the time the bond was executed to E, he had known of the usurious agreement between W. and A. The opinion of the Court in the case cited from 8 Term Reports, is of like import. In that case the validity of the note was sustained exclusively on the ground that it was executed to an innocent assignee, for valuable consideration, without notice of the usury, and implies an opinion of the Court, that the decision would have been otherwise if he had known of the usurious contract.
But should the Court entertain the opinion that the principle ought not to be sustained to the full extent for which I contend, and be of opinion that there- may be possible cases in which it would be improper to extend relief to the borrower or his surety after executing their note to the assignee, with notice of a previous usurious note, and in substitution thereof—I earnestly and respectfully insist, that the present is not such a case, but that, under the circumstances of this case, the note which was executed by Rodes and his surety Goodloe, to Ross, is infected with the corruption of the original, illegal and usurious contract between Rodes and the Bogies; is, in fact and in law, usurious; conferred on Ross no better right to demand, nor imposed on Rodes any greater obligation to make payment, than existed before its execution, under the note which was assigned to Ross by the Bogies.
Ross not only became party to the original turpitude, by purchasing the usurious note from Bogies, with notice, but he more effectually identified himself with the guilt *600 of that transaction, and committed a further violation! of law, by requiring Nodes and his surety, not only to in-elude in their note to him, all the interest, legal and illegal, which was to have been paid by Rodes under his usurious contract with the Bogies, but also, usurious interest at the same rate from the time Rodes’ note to the Bogies became payable, until the note executed to him became payable. But the Court say that, by giving up the note of Rodes, which was assigned to him, Ross has lost his recourse on the Bogies, and that is understood to be, in the opinion of the Court, such an injury to Ross, as to create or form part, or the whole, of such a valuable consideration as to uphold the note executed by Rodes and Goodloe to him, and east upon them liability for all the usurious interest that accrued under the contract between Rodes and Bogies: It should not, however, be forgotten that the injury to which the Court refers, if any injury it be, was superinduced by the illegal and corrupt agreement of Ross, in exacting of Rodes, for further forbearance, introspective and prospective, usurious interest, and it is not perceived how an injury brought upon himself by his violation of law, can be converted into a valuable consideration, so as to cast upon Rodes and his surety, a liability greater than they would otherwise have been under to him.
The promise made by Rodes to Ross, before the note was assigned by the Bogies, cannot effect the case.— Ross, had previously been informed of the usurious contract betwen Rodes and the Bogies, and he must be presumed to know that the promise was not more binding on Rodes than his note, and created no additional obligation. In truth, the whole complexion of the case shows that Ross was in no respect deluded; that he entered into all the arrangements with his eyes open; became a party to the original usurious contract, knowingly gave his assistance to inforce that usurious contract, and, by shifts and devices, has committed further violations of law, by exacting additional usurious interest, and now attempts to avail himself of the consequence of his own illegal acts, as forming a valuable consideration for what was corruptly done by him, and thereby to cast upon Rodes and his *601 surety legal liability. If this may be done, what cannot be done in evasion of the statute? An injury to the promisee forms, in contemplation of law no better a consideration than a benefit to the promisor; and if an injury to the lender which is superinduced by his usurious and illegal contract or forbearance can be brought to his aid, and made to fix upon the borrower, increased liability; will not any benefit to the borrower connected with or springing out of the usurious contract, have the same effect? and as the giving further day for payment is, in legal contemplation, such a benefit, would not the borrower, by accepting further indulgence; and executing a new note to the lender, place himself in a condition not to-be relieved from the payment of any previously accruing usury which may be contained in the note ? If :such be the correct doctrine of the law, better that we had no statute against usury: it exists in name only; is a shadow without substance, and affords no protection against the shifts and devices of usurers.
Owsley, for Goodloe.
Response to the Petition, by Judge, Ewing.
The principle settled in the case of Jones &c. vs Sevier, 1 Littell’s Rep. 50, and Greathouse vs Throckmorton, 7 J. J. Marsh. 16 and 28, conclusively sustains the Opinion of the Court in this case, upon the point urged by the counsel for a re-hearing; and the reasoning of the Court in those cases, is a full response to the petition.
Ross was not privy to the usurious bargain made between the Bogies and Rodes. That term implies more than notice of the usury, after it has been secured; it implies an agency or particpation in the corrupt bargain-. Ross had notice Of the usury; but at the same time, he was assured by the promise of Rodes, that he would pay it, and thereby induced to surrender his valid claim, upon the Bogies, for the full value thereof for the note, and afterwards to surrender his recourse upon their assignment, with the note to Rodes; and to take the note to him *602 self. The consideration of the note to him, is the discharge of the Bogies from their liability to him for a valid demand, and entitles him as much to recover the amount from Bodes, as if, at the instance of Bodes, and upon his promise of re-payment, he had paid so much money for his benefit. It is true that the responsibility of Bodes, does not rest upon the note assigned, but upon his promise to pay the amount so advanced at his instance, evidenced and secured by the new note executed by him to Boss. And this obligation is the same, in good concience or in law whether he had or had not notice of the usury. Had there been no consideration for the note to the Bogies, and Bodes had promised Boss, knowing that the note was without consideration, that, if he could pay and discharge it, that he would pay him the amount, and in pursuance of his promise, Bodes had executed his note to Boss, it would not be contended that Bodes could plead the want of consideration in the first note, to defeat the recovery of Boss upon the second.
There is no pretence for a charge of collusion, in this case, between Boss and the Bogies, to evade the statute And the danger of evasion contemplated by the counsel, Is but little better guarded against, under the rule which he concedes, than under the one establised by the Court; as, if the object was evasion, it would be quite easy for the usurer to conceal from the assignee, the fact of usury in the note asssigned.
The petition for a re-hearing is overruled.